**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **MME HOLDING COMPANY, LLC** | § | |
| **D/B/A/ MIDAS MUFFLER** | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO._____** |
| **v.** | § | **(JURY)** |
| | § | |
| **WESTCHESTER SURPLUS LINES** | § | |
| **INSURANCE CO., VERICLAIM,** | § | |
| **INC., AND JAMES READING,** | § | |
| **Defendants.** | | |

## COMPLAINT

_____

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, MME Holding Company, LLC d/b/a/ Midas Muffler, Plaintiff ("MME" or "Plaintiff"), and files this Complaint, complaining of Westchester Surplus Lines Insurance Co. ("Westchester"), VeriClaim, Inc. ("VeriClaim"), and James Reading ("Reading"), (collectively referenced at times herein as "Defendants"), and for cause of action, Plaintiff would respectfully show this Honorable Court the following:

### PARTIES

1.      Plaintiff **MME Holding Company**, **LLC d/b/a/ Midas Muffler**, is a limited liability company doing business in the State of Texas at 2500 W. Davis Conroe, Texas 77304.

2.      Defendant **Westchester Surplus Lines Insurance Company** is a foreign corporation doing business in the State of Texas and may be served with summons by serving Saverio Rocca, Assistant General Counsel ACE Group of Insurance Companies, 436 Walnut Street, Philadelphia, PA 19106-3703, pursuant to the Service of Suit Endorsement to the Policy.

3.      Defendant **VeriClaim Inc.** is a foreign corporation engaged in the business of insurance in

1

the State of Texas. VeriClaim may be served with process by serving its agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136.

4.     **Defendant James Reading** is an individual residing in and domiciled in the State of Tennessee. At all times material and relevant to the allegations in this Complaint, Defendant Reading has done business in Texas as an independent insurance adjuster. This Defendant may be served with personal process by a process server at his place of business located at 9724 Kingston Pike Ste 208 Knoxville, Tennessee 37922.

## JURISDICTION

5.     This Court has jurisdiction based on diversity of citizenship of the parties under 28 U.S.C § 1332 and the amount in controversy is within the jurisdictional limits of the Court.

## VENUE

6.     Venue is proper in the Southern District of Texas, Galveston Division, under 28 U.S.C § 1391(b)(2) because at least one of the commercial properties and an occurrence made the basis of this Complaint, is located in and/or took place in Brazoria County, Texas, which is in this district and division.

## FACTS

7.     This is a first-party commercial insurance claim dispute arising out of Hurricane Harvey.

8.     Plaintiff MME owns commercial properties doing business as Midas Mufflers located at: 149 State Hwy 332 W., Lake Jackson, Texas, 77566 ("Lake Jackson Property") and 379 Bay Area Blvd., Webster, Texas 77598 ("Webster Property") (at times referenced together herein as the "Properties").

9.     Westchester sold and issued the commercial insurance policy ("the Policy") to Plaintiff to

insure these Properties against covered loss events like a hurricane.

10.     On or about August 25, 2017, Hurricane Harvey made landfall on the Texas Gulf Coast as a Category 4 Hurricane with extreme wind speeds reaching 130 mph or higher. From August 25th through September 1, 2017, Hurricane Harvey continued to cause widespread devastation and destruction along the Texas Gulf Coast through Houston to Beaumont and beyond. Hurricane Harvey produced a record number of tornados, extreme wind speeds, and record setting amounts of rain fall.

11.     Specifically, MME's Properties, each which contain large, rectangular and square structured buildings with flat roofs, sustained extensive wind damage to the roofs, and destructive water intrusion into the interior shop areas, office, lobby areas, and bathrooms, among other areas of damage.

12.     On or about August 29, 2017, MME filed a claim (the "Claim") on its commercial insurance Policy with its insurance company, Westchester, for roof damage, water damage, wind damage, and claims for loss business income or lost profits.

13.     At that time, and pursuant to the Policy, MME made a simple request to Westchester—to cover and pay for the cost of repairs to the Properties, including, but not limited to, replacement and/or repair of the roofs, as well as the interior damages, and loss business income.

14.     At all times relevant, MME was and is entitled to benefits under the Westchester Policy as it specifically covered these Properties for damage, caused by covered perils, including hurricanes like Harvey, windstorms and hail; and further, the Policy provided that Westchester would pay the replacement cost value ("RCV") to repair and/or replace the damages caused by the covered peril, and the loss of business income or loss profits.

15.     On or about September 3, 2017, Westchester assigned VeriClaim, Inc. ("VeriClaim") an adjusting company to handle the investigation of the damages to the Properties. Subsequently, either VeriClaim or Westchester assigned independent adjuster James Reading ("Reading") to investigate MME's Claim and damages to the Properties. Reading was improperly trained and failed to perform a thorough and reasonable investigation of the Claim and damaged Properties. e failed to perform an adequate investigation of MME's Claim that would meet the minimum standards of performance pursuant to industry standards, as well as Sections 21.203 and 21.205 of the Texas Administrative Code, applicable law, or otherwise. TEX. ADMIN. CODE §§21.203, 21.205.

16.     Westchester failed to thoroughly review and properly oversee the work-product of its adjusters and engineers and instead, just accepted their damage analysis, or lack thereof, without meaningful review, which resulted ultimately in Westchester's approval of an improper adjustment and an inadequate, unfair settlement of Plaintiff's Claim.

17.     Plaintiff contends that Westchester and Reading set out to deny and/or underpay Plaintiff's properly covered damages. As a result of this unreasonable investigation by Westchester's adjusters and engineers, Plaintiff suffered further damages because it was unable to make necessary repairs which has further led to a loss of business income for the two Properties. To date, MME has yet to receive full payment under the Policy for its damages to the Properties and loss of business income or loss profits.

18.     The estimate submitted by Reading/VeriClaim for each of the Properties were grossly inadequate to cover the repairs needed to bring these Properties back to their former pre-Harvey days. By letter, September 24, 2018, from Morey Howell, a senior claims examiner with Chubb North American Claims ("Chubb"), located in Alpharetta, Georgia the property portion of the

Claim was denied. Chubb is the parent corporation of Westchester. Howell wrote; "[b]ased on our investigation, the building [s] did not sustain physical damage from a covered cause of loss. Pursuant to the above policy language [portions of the Policy quoting Exclusions and Limitations] Chubb is unable to afford coverage under your policy of insurance." Simply stated, MME received no payment on its Property Claim because the estimates of Reading and the engineers report by EFI were below the deductibles of the Policy—$9,000 for one Property and $12,000 for the other.

19.     With regard to the business loss claim for the **Lake Jackson Property**, Westchester reviewed Plaintiff's documentation and based on the mandatory evacuation order for Lake Jackson, Chubb calculated loss revenue from August 25, 2017 to September 7, 2017 to be $55,606; 72 hour waiting period $10,739; Saved Expenses $15,618; 2% wind deductible $3,600, and the total amount owed $25,649. Chubb issued a payment for loss profits or loss business expense of $20,904 on October 16, 2017 with a supplemental payment of $4,745 on October 20, 2017.

20.     With regard to lost business expense or loss profits for the **Webster Property** based on the roadblocks around the store, the estimate provides the exact same areas investigated as with the Lake Jackson estimate. Chubb calculated the claim payments as follows: lost revenue $19,349; 72 hour waiting period $4,837, Saved Expenses $4,134; Wind deductible of $9,000 with a total payment amount of $1,378 on November 30, 2017.

21.     In addition to Reading, Westchester engaged the assistance of an **engineering firm, EFI Global ("EFI")** to reinspect the Properties. EFI's re-inspections took place on or about July 19, 2018. EFI documented interior water damage and were provided with thermal imaging showing moisture intrusion of the roof system. However, EFI concluded that all the damages were from a weathered, aged roof membrane, improper flashing, and construction defects. EFI allegedly found no storm created openings on either Properties' roofs as required by the Policy for there to be

coverage for the interior water damages. EFI concluded that all of the damages were due to wear and tear.

22.     Plaintiff hired a public adjuster, **Tom Ross of RHI Claims Specialists** ("RHI") to help evaluate and investigate the damages to the Webster and Lake Jackson Properties. RHI's estimates for the Lake Jackson Property show damages, including but not limited to, the seating area, main desk area, restrooms, and roof, for a preliminary estimate of $57,007.35. For the Webster Property, RHI investigated the same primary areas as it did in the Lake Jackson building and showed a preliminary estimate of $60,170.24. Westchester was given copies of these RHI estimates.

23.     There is no question that the Policy between Plaintiff and Westchester covered the damages to Plaintiff's Property; therefore, Plaintiff was and is entitled to receive all Policy benefits, among other damages available under the law and in equity.

24.     At all material times hereto, Reading and VeriClaim, were agents of Westchester based on their acts during the handling of this Claim, including inspections, adjustments, and aiding in adjusting a loss for or on behalf of the insurer. TEX. INS. CODE §4001.051. Separately, and/or in the alternative, as referenced and described above, Westchester ratified the actions and conduct of Reading and VeriClaim, including the completion of their duties under common and statutory law.

25.     Compounding Westchester's failure to adequately train and supervise its adjuster, Reading, Westchester further failed to adequately review the estimate of MME's Properties' damages. Rather, Westchester adopted and accepted VeriClaim/Reading's substandard inspection and estimates without question. Further, Westchester ratified VeriClaim/Reading's inadequate methods of conducting adjustments and investigations of property damages, resulting in MME's Property Claim being denied.

26.     Westchester intentionally chose and adopted a business model that provided for retaining

very few, if any, qualified adjusters as employees or retaining any qualified outside adjusters to perform Westchester's non-delegable duties of investigating claims in accordance with applicable Texas law. Further, it is equally as clear, that Westchester either had no procedures or had inadequate procedures to monitor or regularly audit the work product of its adjusters and claims personnel. Westchester was reasonably aware, knew, or should have known, that the claim estimates generated by its adjusters, inclusive of the estimates at issue in this case, were wholly deficient by any measure under the Policy and applicable law and were likely to result in a considerable underpayment or complete denial of a claim as occurred with MME's Claim here.

27.     Insurance companies, like Westchester, compensate its adjusters and/or claims personnel by incentivizing them to exclude or artificially minimize the amount of storm-related damages payable under its policies, while forcing policyholders to self-perform material aspects of the claim investigation without training or instruction, and in express contravention of Texas law. The adjusters accepted these terms knowing that they would likely cause their inspections and resulting claim estimates to be minimal, and that they were engaging in claims handling procedures that they were neither qualified nor properly trained to sufficiently undertake.

28.     The Policy between MME and Westchester covered the Harvey damages to MME's Properties and the loss profits. Therefore, MME is entitled to receive all Policy benefits. There is no question that Westchester undervalued and underpaid the majority of damaged items as well as denying others without merit. In order to receive what is owed, MME was forced to retain the attorneys and the firm whose signatures appear below.

29.     It is clear from these facts, that Westchester, Reading, and VeriClaim, set out to deny and/or underpay properly covered damages. Westchester failed to provide full coverage for the damages sustained by Plaintiff and under-scoped and undervalued the damages that were allowed, thus

denying Plaintiff an adequate and sufficient payment. To date Plaintiff has yet to receive full payment under the Policy which has caused a delay in Plaintiff's' ability to fully repair its buildings' losses. Moreover, additional damages have occurred from the lack of repair.

30.     Plaintiff alleges that Westchester, Reading, and VeriClaim, set out to deny and/or underpay Plaintiff's Claim for properly covered damages. Westchester failed to properly train, adequately supervise, and/or oversee Reading's handling of Plaintiff's Claim. As a result, VeriClaim and Reading failed to perform a thorough and reasonable investigation of Plaintiff's Claim. Specifically, they failed to sufficiently inspect and document all damaged areas of Plaintiff's Properties and thereby failed to include other damaged property and contents which resulted in improperly estimating the damages and repairs needed. The estimates by Reading are grossly deficient in scope as is the engineering report by EFI, and accordingly, Plaintiff's Claim was wrongly denied.

31.     By wrongfully denying a proper payment to Plaintiff and wholly failing to properly handle Plaintiff's Claim, Westchester breached the duty of good faith and fair dealing owed to Plaintiff as insureds in an insurance contract with Westchester. "Good faith and fair dealing" is defined as the degree and diligence which a man of ordinary care and prudence would exercise in the management of one's own business. *Arnold v. Nat'l Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex. 1987). A special relationship exists as a result of policyholders like Plaintiff MME and Westchester's (the insurer) "unequal bargaining power"—because the insurer has the ability to more easily take advantage of the insured due to an insurer's exclusive control over the evaluation, processing and denial of claims. In legal terms, this unlevel playing field results in a "special relationship" between an insurer and insured and further justifies the imposition of a common-law duty on insurers to deal fairly and in good faith with their insureds. Westchester breached its

common-law duty by failing to deal fairly and in good faith with its insured MME.

32.    Westchester's conduct was not only a breach of its common law duty to deal fairly and in good faith with Plaintiff MME based on this "special relationship" between the parties, but also constitutes a breach of the insurance contract between Westchester and MME. Over a century ago, Justice Learned Hand wrote: "[a] contract is an obligation attached by the mere force of law to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent." *Hotchkiss v. Nat'l City Bank,* 200 F. 287, 293 (S.D.N.Y. 1911).

33.    The insurance Policy in effect between MME and Westchester is a contract wherein the insurance company, Westchester, offers to provide insurance coverage and services associated therewith in exchange for the policyholder's payment of annual premiums in consideration of the contract. Texas law recognizes a cause of action for breach of contact. Pursuant to Texas law, either party to the contract can initiate legal action against the other party for violations of that contract that causes damages. A breach of contract claim is distinct and independent from a tort claim such as a breach of the duty of good faith and fair dealing or a violation of statutory or other extra-contractual claims. Tort and contract claims are separate and independent, yet they are factually interwoven, and the same evidence is often admissible on both types of claims in an insurance policy claim dispute.

34.    Here, Westchester failed to perform its contractual duties to adequately compensate the MME under the terms of the Policy. Specifically, Westchester refused to pay Policy proceeds although due notice was made for proceeds to be paid in an amount sufficient to cover the damaged Properties, and all conditions precedent to recovery upon the Policy had been carried out and accomplished by Plaintiff. Thus, from and after the time Plaintiff's Claim was presented to Westchester, the liability of Westchester to pay the full Claim in accordance with the terms of the

Policy was reasonably clear. However, Westchester refused to pay Plaintiff despite there being no basis whatsoever upon which a reasonable insurance company would have relied to deny payment. Westchester's conduct has caused MME to lose Policy benefits to which it was entitled, and which should have been paid by Westchester, but were not. Westchester's conduct constitutes a breach of contract as well as a breach of the common law duty of good faith and fair dealing.

35.    Westchester's conduct here includes various torts, such as violations of the Texas Insurance Code. Here, in Texas, the vast majority of insurance policies, including Westchester's Policy contract with Plaintiff, does not contain provisions to account for an insurance company's and/or its representatives' (improper) acts or omissions undertaken through their handling of a claim; which incidentally affect the duration and outcome of the claim, and otherwise, to policyholders' detriment. To account for such acts and omissions that fall outside the four-corners of the contract language (but nonetheless affect the claim and/or detrimentally harm the policyholder), the Texas Legislature in 1973 enacted the Texas Deceptive Trade Practices—Consumer Protection Act (hereafter referred to as the "DTPA") to "protect consumers against false, misleading, and deceptive business practices, unconscionable actions…and to provide efficient and economical procedures to secure such protections." TEX. BUS. & COM. CODE §17.44. Specifically, the DTPA provides that a consumer may maintain an action where an insurance company (or one of its employees or agents) commits an act or practice in violation of Chapter 541 and/or 542 of the Texas Insurance Code. TEX. BUS. & COM. CODE §17.50. These enumerated acts (as found within Chapters 541 and 542 of the Texas Insurance Code) are generally not included within the written contractual terms of the insurance policy. These two bodies of law (contract and tort) are neither overlapping, nor mutually exclusive. Rather, they are entirely independent issues under

independent bodies of law with unique causes of action and damages available.

36.    A later Texas Legislature specifically created and enacted the Texas Insurance Code to protect consumers, and to regulate insurance professionals, like Defendant Westchester because the language of insurance policy contracts (without more) were not properly serving those functions. Chapters 541 and 542 of the Texas Insurance Code include duties and obligations that any person or entity engaged in the business of insurance in the State of Texas must follow. Those duties and obligations are wholly independent of those for which an insurer may be contractually responsible. Specifically, Chapter 541 of the Texas Insurance Code states that "the purpose of this chapter is to regulate trade practices in the business of insurance by: (1) defining or providing for the determination of trade practices in this state that are unfair methods of competition or unfair or deceptive acts or practices; and (2) prohibiting those trade practices." Chapters 541 and 542 of the Texas Insurance Code describe various claims settlement practices, among extensive other rules and requirements with which anyone engaged in the business of insurance in the State of Texas must comply and not violate; as well as deceptive, unfair, and prohibited practices with which anyone engaged in the business of insurance in the State of Texas must not engage or undertake. Insurance policies in Texas, such as MME's Policy with Westchester, are silent as to these statutory provisions.

37.    Westchester voluntarily assumed a non-contractual obligation to inspect and value Plaintiff's damages, thereby causing its conduct to be governed by the applicable provisions of the Texas Insurance Code. However, Westchester then failed to comply with its obligations and duties under the law for inspecting and valuing covered losses, and likewise, failed to perform its contractual duty to adequately compensate Plaintiff for monies owed to it under the Policy.

38.    Falsehoods and misrepresentations may be communicated by actions as well as by the

spoken word; therefore, deceptive conduct is equivalent to a verbal representation. Westchester and its agents made misrepresentations by means of deceptive conduct by failing to conduct a reasonable inspection and investigation of Plaintiff's damages. Westchester has committed tort(s) with its numerous misrepresentations, violations of the Texas Insurance Code and otherwise. Specifically, Westchester and its personnel, including but not limited to Reading, violated Chapter 541 of the Texas Insurance Code by misrepresenting to the Plaintiff that some damages to the Properties were not covered under the Policy, even though the damages these Properties sustained were caused by a covered occurrence. Westchester and its personnel further violated the Texas Insurance Code by undervaluing and under-scoping the damages the Plaintiff's incurred and continue to incur. Westchester's misrepresentations caused Plaintiff to suffer "actual damages" – which, under the Texas Insurance Code, are those recoverable at common law – as well as reasonable and necessary attorney's fees, and any other damages. Additionally, for violations of Chapter 541 of the Texas Insurance Code, that law entitles Plaintiff to recover court costs, reasonable and necessary attorney fees, and any other relief the court determines is proper. TEX. INS. CODE §541.152. Westchester and its personnel's conduct, as described above and herein, constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices, TEX. INS. CODE §541.060(a)(1).

39.    Westchester and its personnel failed to make an attempt to settle Plaintiff's Claim in a prompt, fair, and/or equitable manner, although it was aware of its liability to Plaintiff's. As such, Westchester's conduct in this regard constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(2)(A). Specifically, Westchester's and its personnel's failure to properly investigate, their undervaluation of the Claim, and conduct otherwise, caused Plaintiff to lose Policy benefits to which it was entitled, and which should have

been paid initially and timely by Westchester but were not. Further, Westchester's conduct necessitated that Plaintiff retain the services of both a public adjuster and then an attorney to attempt to be made whole related to Plaintiff's Harvey damages. Plaintiff is entitled to recover actual damages for Defendants' violation of this section of the Texas Insurance Code. *Id*.

40.     Westchester neither communicated that any future settlements or payments would be forthcoming to pay for the entire losses covered under the Policy, nor provided any explanation for the failure to adequately resolve Plaintiff's Claim. As such, Westchester's conduct is a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(3). Westchester's conduct caused Plaintiffs to suffer actual damages and lose Policy benefits to which they were entitled, and which should have been paid initially by Westchester, but were not. Plaintiff, therefore, is entitled to recover Policy benefits, as actual damages as well as attorney's fees and costs for Westchester's and its personnel's violation(s) of this section of the Texas Insurance Code. *Id.*

41.     Furthermore, Westchester failed to affirm or deny coverage of Plaintiff's Claim within a reasonable time. Specifically, Plaintiff did not receive from Westchester a timely, written indication of acceptance or rejection of Plaintiff's full and entire Claim. Westchester's conduct constitutes a violation of Section 541.060(a)(4) of the Texas Insurance Code, Unfair Settlement Practices. *See* TEX. INS. CODE § 541.060(a)(4). Westchester's conduct caused Plaintiff to lose Policy benefits to which it was entitled, and which Westchester should have paid Plaintiff initially, in full. Plaintiff therefore, is entitled to recover Policy benefits as actual damages for Westchester's violation of this section of the Texas Insurance Code as well as all other damages to which it is entitled under the relevant law. *Id.*

42.     Finally, Westchester failed to conduct a reasonable investigation and refused to fully

compensate Plaintiff under the terms of the Policy. Specifically, Westchester and Reading performed an outcome-oriented investigation of Plaintiff's Claim, which resulted in a biased, unfair, and inequitable evaluation of Plaintiff's losses on the Property. Westchester's conduct constitutes a violation of Section 541.060(a)(7) of the Texas Insurance Code, Unfair Settlement Practices. *See* TEX. INS. CODE § 541.060(a)(7). Westchester's conduct caused Plaintiff to lose Policy benefits to which it was entitled, and which Westchester should have paid initially, in full, but failed to do so. Plaintiff therefore, is entitled to recover Policy benefits as actual damages as well as attorney's fees and costs for Westchester's violations of this section of the Texas Insurance Code, among other damages. *Id.*

43.    After receiving notice of Plaintiff's Claim, Westchester failed to meet its obligations under the Texas Insurance Code regarding timely acknowledging Plaintiff's Claim, beginning an investigation of Plaintiff's Claim, and requesting all information reasonably necessary to investigate Plaintiff's Claim within the statutorily mandated time of receiving notice of Plaintiff's Claim. Westchester's conduct is a violation of Section 542.055 of the Texas Insurance Code Prompt Payment Claims Act. *See* TEX. INS. CODE §542.055. Westchester's conduct caused Plaintiff to suffer actual damages which includes the loss of Policy benefits to which it was entitled, and which should have been paid by Westchester but was not. Plaintiff, therefore, is entitled to recover Policy benefits as actual damages, as well as attorney's fees, interest, costs and all other amounts to which it is entitled, for Westchester's violations of this section of the Texas Insurance Code. *Id.*

44.    Westchester failed to accept or deny Plaintiff's full and entire Claim within the statutorily mandated time of receiving all necessary information. Westchester's conduct constitutes a violation of Section 542.056 of the Texas Insurance Code, Prompt Payment of Claims Act. *See*

TEX. INS. CODE §542.056. Westchester's conduct caused Plaintiffs to suffer actual damages which constitutes the loss of Policy benefits to which it is entitled, and which Westchester should have paid, in full. Plaintiff, therefore, is entitled to recover Policy benefits as actual damages as well as attorney's fees, interest, costs and all other amounts to which it is entitled, for Westchester's violations of this section of the Texas Insurance Code. *Id.*

45.     Westchester failed to meet its obligations under the Texas Insurance Code regarding payment of Plaintiff's Claim without delay. Specifically, Westchester delayed full payment of Plaintiff's Claim longer than allowed, and, to date, Plaintiff still has not received any payment of its Claim. Westchester's conduct constitutes a violation of Section 542.058 of the Texas Insurance Code, Prompt Payment of Claims Act. *See* TEX. INS. CODE §542.058. As a result of Westchester's violation of Section 542.058 of the Texas Insurance Code, Plaintiff lost Policy benefits to which it was entitled, and which Westchester should have paid it timely and in full. Plaintiff, therefore, is entitled to recover Policy benefits as its actual damages as well as attorney's fees, interest, costs and all other amounts to which it is entitled, for Westchester's violations of this section of the Texas Insurance Code. *Id.*

46.     From the time Plaintiff's Claim was presented to Westchester, the liability of Westchester to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, Westchester has refused to pay Plaintiff, despite there being no basis whatsoever upon which a reasonable insurance company would have relied to deny full payment. Westchester's conduct constitutes a breach of the common law duty of good faith and fair dealing.

47.     Additionally, Westchester and its personnel knowingly and/or recklessly made false representations, as described above and herein, as to material facts and/or knowingly concealed

from Plaintiff all or part of material information relevant to the Claim.

48.      As a result of Westchester and its personnel's wrongful acts and omissions, Plaintiff was forced to retain the professional services of the attorneys and law firm who are representing them with respect to these causes of action and whose signatures appear below on this pleading.

49.      Plaintiff's experience is not an isolated case. The acts and omissions Westchester has committed in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of Westchester with regard to handling these types of claims. Westchester's entire process is unfairly designed to reach favorable outcomes for the company at the expense of the policyholders, like MME here.

50.      Westchester is liable to MME for breach of contract, as well as violations of the Texas Insurance Code, and breach of the common law duty of good faith and fair dealing. Westchester's personnel also committed several violations of the Texas Insurance Code.

51.      All conditions precedent to the Plaintiff's claims for relief have been performed or have occurred and/or Defendant waived the same. This includes, but is not limited to, providing notice pursuant to Texas Insurance Code 542A and pre-litigation alternative dispute resolution, if any.

## CAUSES OF ACTION:
### CAUSES OF ACTION AGAINST WESTCHESTER

52.      Plaintiff incorporates by this reference each and all of the allegations contained in Paragraphs 1-53 of this Complaint as though fully set forth herein.

53.      Westchester is liable to Plaintiff for breach of contract, as well as violations of the Texas Insurance Code, and breach of the common law duty of good faith and fair dealing.

## COUNT I.

### BREACH OF CONTRACT

54.      Plaintiff incorporates by this reference each and all of the factual allegations contained in

Paragraphs 1-53 of this Complaint as though fully set forth herein.

55.     Defendant Westchester's conduct constitutes a breach of the insurance contract made between Westchester's and Plaintiff. Defendant Westchester's failure and/or refusal, as described above, to pay the adequate compensation as it is obligated to do under the terms of the Policy in question, and under the laws of the State of Texas, constitutes a breach of Defendant Westchester's insurance contract with Plaintiff.

## COUNT II.

### NONCOMPLIANCE WITH TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES

56.     Plaintiff incorporates by this reference each and all of the factual allegations contained in this Complaint as though fully set forth herein.

57.     Defendant Westchester's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. *See* TEX. INS. CODE §541.060(a)-§541.060(a)(7). All violations under this article are made actionable by Section 541.151 of the Texas Insurance Code. *See* TEX. INS. CODE §541.151.

58.     Defendant Westchester's unfair settlement practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, is a violation of Section 541.060(a)(1) and constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(1).

59.     Defendant Westchester's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Claim, even though Defendant Westchester's liability under the Policy was reasonably clear, is a violation of Section 541.060(a)(2)(A) and constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(2)(A).

60.     Defendant Westchester's unfair settlement practice, as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its offer of a compromise settlement of the Claim, is a violation of Section 541.060(a)(3) and constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(3).

61.     Defendant Westchester's unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the Claim to Plaintiff, or to submit a reservation of rights to Plaintiff, is a violation of Section 541.060(a)(4) and constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(4).

62.     Defendant Westchester's unfair settlement practice, as described above, of refusing to pay Plaintiff's Claim without conducting a reasonable investigation, is a violation of Section 541.060(a)(7) and constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(7).

## COUNT III.

### NONCOMPLIANCE WITH TEXAS INSURANCE CODE:
### THE PROMPT PAYMENT OF CLAIMS ACT

63.     Plaintiff's incorporate by this reference each and all of the factual allegations contained in this Complaint as though fully set forth herein.

64.     Defendant Westchester's conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims Act. All violations made under this article are made actionable by Section 542.060 of the Texas Insurance Code. *See* TEX. INS. CODE §542.060.

65.     Defendant Westchester's failure to acknowledge receipt of Plaintiff's Claim, to commence investigation of the Claim, and to request from Plaintiff's all items, statements, and forms that it

reasonably believed would be required within the applicable time constraints, as described above, constitutes a non-prompt payment of the Claim in violation of the Texas Insurance Code Section 542.055.

66.     Defendant Westchester's failure to notify Plaintiff in writing of its acceptance or rejection of the Claim within the applicable time constraints, constitutes a non-prompt payment of the Claim. TEX. INS. CODE §542.056.

67.     Defendant Westchester's delay of the payment of Plaintiff's Claim following its receipt of all items, statements, and forms reasonably requested and required, took longer than the amount of time statutorily allowed, as described above, and is a violation of Section 542.058. Such conduct constitutes a non-prompt payment of the Claim. *See* TEX. INS. CODE §542.058.

## C OUNT IV.

### ACTS CONSTITUTING ACTING AS AGENT

68.     Plaintiff incorporates by this reference each and all of the factual allegations contained in this Complaint as though fully set forth herein.

69.     As referenced and described above, and with further such conduct throughout this litigation and lawsuit, Reading, among others, are agents of Defendant Westchester based on their acts, for or on behalf of Westchester, during and after the handling of this Claim, including inspections, adjustments, and aiding in adjusting a loss of Plaintiff's Policy benefits. *See* TEX. INS. CODE §4001.051.

70.     Separately, and/or in the alternative, as referenced and described above, Defendant Westchester ratified the actions and conduct of its agents and personnel, including the completion of their duties under the common law and statutory law.

## COUNT V.

### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

19

71.     Plaintiff incorporates by this reference each and all of the factual allegations contained in this Complaint as though fully set forth herein.

72.     Because an insurer has the ability and more easily can take advantage of the insured due to an insurer's exclusive control over the evaluation, processing and denial of claims, insurance companies and their policies present an inherent "unequal bargaining power." In legal terms, this unlevel playing field results in a "special relationship" between an insurer and an insured and further justifies the imposition of a common law duty on insurers to "deal fairly and in good faith" with their insureds.

73.     Defendant Westchester's conduct however, as described herein, constitutes a breach of the common law duty of good faith and fair dealing owed to insureds in insurance contracts. Defendant Westchester failed to perform its contractual duties to adequately compensate Plaintiff under the terms of the Policy. Specifically, Defendant Westchester refused to pay the full proceeds of the Policy, although due notice was made for proceeds to be paid in an amount sufficient to cover the damaged Properties and to restore them to its condition before Harvey. Thus, from and after the time Plaintiff's Claim was presented to Defendant Westchester the liability of Defendant Westchester to pay the full Claim in accordance with the terms of the Policy was reasonably clear and there was no basis upon which a reasonable insurer would have relied to deny the full payment.

74.     Defendant Westchester's failure, as described above, to adequately and reasonably investigate and evaluate Plaintiff's Claim, and to pay the full proceeds of the Policy, although, at that time, Defendant Westchester knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing owed to Plaintiff. Defendant Westchester's conduct has caused Plaintiff to lose Policy benefits to which they were entitled, and which Westchester should have paid, in full.

## KNOWLEDGE

75.     Each of the acts described above and herein, together and singularly, was done "knowingly," as that term is used in the Texas Insurance Code and was a producing cause of Plaintiff's damages described herein.

## DAMAGES

76.     Plaintiff will show that all the acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiff.

77.     As previously mentioned, the damages caused by Harvey have not all been properly addressed, or repairs made in the months since, causing further damages to the Properties, as well as undue hardship and burden to Plaintiff. These additional damages are a direct result of Westchester's mishandling of Plaintiff's Claim in violation of the laws set forth above.

78.     For breach of contract, Plaintiff is entitled to regain the benefit of its bargain for its purchase of the Policy which is the amount of their Claim, together with attorney's fees under Section 38.001 of the Texas Civil Practices and Remedies Code. All conditions precedent to Plaintiff's claims for relief have been performed or have occurred and/or Westchester has waived the same.

79.     For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the Policy, mental anguish, court costs, interest, and attorney's fees, and all other damages that it is entitled to. For knowing conduct of the acts described above, Plaintiff asks for three times their actual damages under Section 541.152 of the Texas Insurance Code. *See* TEX. INS. CODE §541.152.

80.     For noncompliance with Texas Insurance Code, Prompt Payment of Claims Act, Plaintiff is entitled to the actual damages, as well as simple interest on the amount of the Claim as damages each year at the rate determined on the date of judgment, by adding five percent (5%) of the interest rate determined under Section 304.003, Finance Code, together with reasonable and necessary attorney's fees. *See* TEX. INS. CODE §542.060.

81.     For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, exemplary damages, and damages for emotional distress.

82.     For loss of business expense or loss profits, Plaintiff is entitled to these special damages, the measure of which is net profits and which are calculated by deducting total expenses from total receipts.

83.     For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the attorneys whose names are subscribed to this pleading. Plaintiff are entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorneys in the preparation and trial of this action, including any appeals and/or further legal recourse post-trial.

## JURY DEMAND

84.     Plaintiff hereby requests that all causes be tried by a jury consisting of citizens residing in Galveston, County Texas. Plaintiff hereby tenders the appropriate jury fee with the filing of this Complaint.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that upon trial hereof, Plaintiff has and recover such sums as would reasonably and justly compensate them in accordance

with the rules of law and procedure, as to actual damages, treble damages under the Texas Insurance Code, and all special, punitive and exemplary damages as may be found. In addition, Plaintiff requests the award of attorney's fees for the trial and any appeal of this case, for all costs of Court on their behalf expended, for prejudgment and post-judgment interest as allowed by law, and for any other and further relief, either at law or in equity, to which they may show themselves justly entitled.

Respectfully submitted,

**Merlin Law Group, P.A.**

BY:   */s/J. Ryan Fowler*
       **\*J. Ryan Fowler**
       State Bar No. 24058357
       Fed. Bar No. 1060803
       RMSdocket@merlinlawgroup.com
       515 Post Oak Blvd, Suite 510
       Houston, Texas 77027
       (713) 626-8880 (Office)
       (713) 626-8881 (Facsimile)

       **\*Lead Counsel for Plaintiff**

       **ATTORNEYS FOR PLAINTIFF**